The final case set for argument today is No. 16-2291, Abu Hashim Malick v. JP Morgan Chase. Good morning. I'm Abu Hashim Malick. First of all, I want to thank the professional staff. They were very helpful to me. Good. I'm glad to hear that. Thank you. And basically, the only thing I know, I was wrong by JP Morgan Chase and Safeguard. The damages took place while the house was in their custody. There's no doubt about it. And they basically claimed that either somebody whom I knew that I was away, he stole, or somebody visit motel nearby from there came and stole, not them. That house had been unoccupied in mid-'90s for a couple of years, late-'90s for three, four years, early-'00s for about a couple of years, and late-'00s until November, from November 2008 to May 2011, before JP Morgan took over. And there was not a single incident during all that time. No property lost, nobody trespassed. The second thing they're saying, the proximity to the small motel, high-class motel, and there are four properties before they come to my property. And I have done some research. The only incident I came across was in 1986 for a burglary. And the motel has been there since 1960s. Once they took over the property in May of 2011, within a few days, the house was destroyed, ripped, ransacked, robbed. From appliances to furniture, from silverware to pots and pans, from water-copper tubing to bathroom fixtures, from antique grandfather's clock to my late son's last apparel and his hair lock. They deprived my brother, who is my second mortgage holder, who was overseeing it, by changing the lock that he couldn't oversee anymore. They have not, to substantiate their claims, excuse me, they have not provided any evidence to their theory. As far as the safeguard is concerned, the first time I found out who had done it, there was a little sticker posted on my door with an 800 number. So I called them and told them I'm a resident here and sent a certified mail, and they still kept coming back to change the locks, you know, harassing basically. This thing has left me on a borderline paranoid, you know, with the context. I had installed a fence in the front yard. There's no walkway traffic. There's no parking. There's no purpose, the whole length of the street. But even I leave my car open. You know, I never lock my car. Every time you see a car or van or pickup truck parked in front of you, you panic. And like I said, this neighborhood has, you know, you never do it. You leave your doors unlocked and the car unlocked, no problem. The safeguard, you know, I had to install an alarm system. They have caused me major financial harm and psychological trauma because, especially for my son's hair lock and his clothes, his last clothes. The district court gave no leeway to my attorney because he's from Boston. He had preoccupation, and there was no way the judge would even go for an extra day of putting it off. By putting, in order to put the house back in a habitable condition, I have gone, I had some money, 401K money left. I used that all up. And then I'm under debt, and with a fixed income, there's probably I won't be able to pay. And people are like, oh, I know. They've been very gracious, but I feel lowest of the low. And there's still major repairs needed. There's central heating needed. The entire bathroom needs to be redone. Fireplace chimney is falling apart. Re-sheathing and refinishing. Refinish tiles and marble entrances. And I know there are constitutional scholars who testify that impeachment must proceed, and there are constitutional scholars who say otherwise. I don't know much about the law, but I know I will inevitably be harmed by illegal acts of both these offenders. And I'm looking for some equitability from this court. Thank you. We've looked at your papers also. We'll hear from J.P. Morgan and Safeguard, and I'm sorry for the loss of your things. Good morning. May it please the Court. I'm Daniel Krish. I represent J.P. Morgan Chase. Your Honors, the district court carefully and thoughtfully resolved the plaintiff's few remaining claims that had survived summary judgment and dismissal in a 30-page memorandum of decision, made factual findings, reviewed the law. Nothing in the court's decision should give this court any concern that there is an error made either in the law or in the court's factual findings. Could I ask, what is the legal status of the property now? It was in foreclosure for some time, I gather, but I was unable to tell from the record. It is still in foreclosure. There is a state court foreclosure appeal pending. The property is still in foreclosure. How long do you expect that to take? Well, the appeal is Mr. Malik's, and that is currently pending in the Connecticut State Appellate Court. Oh, I see. I didn't understand. Okay. So there's a parallel legal proceeding going on there about the foreclosure. Correct, Your Honor. I see. Okay. I'd be happy to answer any questions. Otherwise, we'd ask the district court judgment be affirmed. Thank you very much. Thank you. We'll hear from Safeguard. Thank you. Good morning. May it please the Court. My name is Bernard Gaffney, representing Safeguard Properties. I think it's clear, based on the record from the district court, that Safeguard had no involvement here whatsoever during the critical time period where the loss was suffered. You were engaged after? Afterwards. The losses occurred. In fact, Your Honor, a year later. And I should have asked this of the bank also, but I wondered what efforts were made by the bank and Safeguard to contact Mr. Malik as the owner of the property to say that we're changing the locks and we're taking custody of the property. So in terms of Safeguard, Safeguard has independent contractors that are hired by the bank to go out and perform a duty, which is to check on the property to see, first of all, whether it is or is not occupied. And that's per CFR. There's a federal regulation as to that. And in that regard, Safeguard went out to the properties. And if there was anybody there, they leave. And if you notice in the record, it indicates Mr. Malik thought there was two to four times where he interacted with Safeguard representatives. But Safeguard indicated that its record showed that it had been out there at least ten times, more than ten times. If squatters move in, you just leave them there? If there's people in there, we just report back to the client, Chase Bank in this case, that there's people there. If there's no one there, we put a sticker on the window. That was evidence in the record as well. And it indicates a number to call and that the locks will be changed at a future date. So those were the things that we had done. And I think that that was entirely proper. And as the judge found, first of all, there was no, under the, for Safeguard's purposes, we were out on summary judgment long before the trial as well. So, and there was no objection to any of the summary judgment motion while there was Attorney Taft in the case. So we felt pretty strongly that we wouldn't be here today, and fortunately we are. But then at the trial, the judge did find that Safeguard's interactions with Mr. Malik were all proper. Mr. Malik had counsel at the trial? I mean, I know there was a debate about the rescheduling and so on, but. So I wasn't present for the trial, but my understanding from the record, Your Honor, is that Mr. Taft was, had his appearance in and was present for at least the pretrial conference. I wasn't clear to what extent he was there for the trial. Yes, okay, that's fine. Thank you. I think we have the arguments. We have your papers. We'll review them carefully and reserve decision right now. We have two more cases on the calendar for submission today, 1260 versus Viacom and Edwards versus Rochester Institute of Technology. We'll take those just on the papers, and the clerk will please adjourn court. Thank you.